IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CLAUDE EDWARD TRIVINO,

    Plaintiff,

    v.                                                                    Civ. No. 15-102 MV/GJF

CAROLYN COLVIN,
*Acting Commissioner of Social Security*,

    Defendant.

**ORDER MODIFYING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on U.S. Magistrate Judge Gregory Fouratt's

Proposed Findings and Recommended Disposition ("PFRD") [Doc. 31], the Commissioner's

Objections to the PFRD [Doc. 32], and Plaintiff's Response [Doc. 33].  Having considered the

pleadings and extant case law, and having conducted a *de novo* review, the Court sustains the

Commissioner's Objections and modifies the Magistrate Judge's Proposed Findings and

Recommended Disposition.  For the following reasons, however, the Court nonetheless reverses

and remands this case.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Claude Edward Trivino ("Plaintiff") applied for disability insurance benefits

under the Social Security Act, alleging a disability onset of August 22, 2011.  Doc. 11, Admin.

R., at 178 [hereinafter "AR"].  His claims were denied initially and on reconsideration.  AR at

109–12, 122–24.  Plaintiff requested a hearing before an administrative law judge ("ALJ").  AR

at 127–28.  ALJ Jeffrey S. Wolfe held a hearing by video teleconference on April 24, 2014, from

his chambers in Tulsa, Oklahoma.  AR at 38.  Following the hearing, the ALJ found Plaintiff was

not disabled.  AR at 15.  The Social Security Administration's ("SSA's") Appeals Council

declined review on January 12, 2015.  AR at 1–3.  Consequently, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 422.210(a) (2015).

Plaintiff timely filed his appeal to the U.S. District Court on February 5, 2015.  Doc. 1, Complaint.  On April 28, 2016, Magistrate Judge Fouratt issued his PFRD, finding legal error based on the ALJ's violation of the "pick and choose" rule as it related to the inclusion of moderate nonexertional impairments in Plaintiff's residual functional capacity.  Doc. 31, PFRD, at 9 [hereinafter "PFRD"]; *see Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to *pick and choose* through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (emphasis added).  Ultimately, Judge Fouratt recommended that this Court reverse and remand based on the above error, but also in addition observed in dicta that he also would have recommended remand based on: (1) "the ALJ's insufficient analysis of Plaintiff's periods of abstinence and their relation to the ALJ's materiality finding;" (2) "the ALJ's failure to articulate why he made adverse credibility findings against the Plaintiff;" and (3) the ALJ's failure explain the weight he accorded to relevant medical opinions.  PFRD 6 n.3, 7 n.4.

Commissioner Carolyn Colvin (the "Commissioner") timely filed her Objections on May 12, 2016 [Doc. 32], asking this Court to "decline to accept the Magistrate Judge's report" based on the Tenth Circuit's May 9, 2016, decision in *Smith v. Colvin*, which clarified "that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity."  Doc. 32, Def.'s Objs., at 2; *see Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016).  Plaintiff responded on May 21, 2016, and conceded the Commissioner's Objection.  Doc. 33, Pl.'s Resp., at 1.  Even so, Plaintiff noted that Judge Fouratt also found error, albeit through footnotes, in "the Commissioner[]'s handling of the

alcohol abuse issue, the failure to articulate adverse credibility findings, and the lack of discussion of appropriate weight to be given to respective doctors." *Id.* at 2.  Thus, Plaintiff asks this Court instead of rejecting the PFRD to recommit this matter to Judge Fouratt for resolution of these alternative grounds.

## STANDARD

**I.      Reviewing The Magistrate Court's Report and Recommendations**

When a party files timely written objections to a magistrate judge's recommendation, the district court generally will conduct a *de novo* review and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(C); *see also* FED. R. CIV. P. 72(b)(3).  However, to preserve an issue for review, "a party's objections to the magistrate judge's report and recommendation must be both timely and specific."    *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996) *("One Parcel")*.

Where a party files timely and specific objections to a magistrate judge's proposed findings and recommendation, "on [] dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing."  *United States v. Raddatz*, 447 U.S. 667, 674 (1980).  The Tenth Circuit has stated that a *de novo* determination pursuant to § 636(b) "requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation."  *In re Griego*, 64 F.3d 580, 583–84 (10th Cir. 1995).  The Supreme Court has noted that, although a district court must make a *de novo* determination of the objected to recommendations under § 636(b)(1), the district court is not precluded from relying on the magistrate judge's proposed findings and recommendations.  *See Raddatz*, 447 U.S. at 676 ("[I]n

providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit

whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a

magistrate's proposed findings and recommendations.") (quoting 28 U.S.C. § 636(b)(1));

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla.*, 8 F.3d 722, 724–25

(10th Cir. 1993) (holding that as part of a *de novo* determination, "the district court 'may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate . .

. .'") (quoting 28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 676) (emphasis omitted).

## II.     The Final Agency Decision

When the Appeals Council denies a claimant's request for review, the ALJ's decision

becomes the final decision of the agency.[1]   The Court's review of that final agency decision is

both factual and legal.   *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing

*Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)) ("The

standard of review in a social security appeal is whether the correct legal standards were applied

and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial

evidence."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  *Langley v. Barnhart*, 373 F.3d 1116,

1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v.*

*Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of

evidence supporting it."  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.  Substantial

evidence does not, however, require a preponderance of the evidence.  *U.S. Cellular Tel. of*

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2015); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

*Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003).  A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Langley*, 373 F.3d at  1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so."  *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

## III.    The SSA Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability.  *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1.  If a claimant's impairments are not equal to one or more of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC").  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e).  In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past

relevant work to determine if the claimant is still capable of performing his past work.  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If a claimant is not prevented from performing his past work, then he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).  If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy.  *See Thomas*, 540 U.S. at 24–25; *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## DISCUSSION

Although the Commissioner's Objections are well taken, this Court's *de novo* review of the record finds insufficient support for her position that the agency's final decision should be affirmed, nor does this Court's adopt Plaintiff's suggestion that the issues be recommitted to the magistrate judge.  *See In re Griego*, 64 F.3d at 583–84 (requiring the reviewing court to consider relevant evidence of record and not merely review the magistrate judge's recommendation).

Prior to the *Smith* decision, which was handed down *after* Judge Fouratt's PFRD,[2] this Court would have adopted the PFRD without amendment, due to the ALJ's limitation to "simple work with 1 or 2-step tasks with routine supervision" while failing to account for "various moderate mental impairments."  Doc. 31, PFRD, at 10.  However, the Court in *Smith* held that an ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity."  821 F.3d 1264, 1269 (10th Cir. 2016).  Therefore, following *Smith*, this Court will

---

[2] Magistrate Judge Fouratt filed his PFRD on April 28, 2016.  Doc. 31, PFRD.  The Tenth Circuit decided *Smith v. Colvin* eleven days later, on May 9, 2016.  *See Smith v. Colvin*, 821 F.3d 1264, 1267 (10th Cir. 2016).

modify Judge Fouratt's PFRD to exclude his original recommendation for remand.  However, rather than simply deny Plaintiff's Motion to Reverse or Remand in light of *Smith*, the Court now elevates into holdings the three other bases for remand that the PFRD identified in dicta.  These three grounds for remand, which include – (1) the ALJ's insufficient drug or alcohol abuse ("DAA") materiality finding; (2) the ALJ's underdeveloped credibility findings; and (3) the ALJ's failure to properly evaluate medical opinions in the record – will be discussed sequentially after a brief overview of the ALJ's decision.

### I.    The ALJ's Decision

The ALJ issued his decision on October 31, 2014.  AR at 21–32.  At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 22, 2011, through his last insured date of December 31, 2012.  AR at 23.  Because Plaintiff had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two.  AR at 23–24.  There, he found that Plaintiff suffered from the following severe impairments: (1) posttraumatic stress disorder ("PTSD"); (2) schizophrenia, paranoid type; and (3) alcohol ("ETOH") use disorder.  AR at 23.  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a Listing.  AR at 24.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC.  AR at 25–26.  In fact, based on Plaintiff's alcohol abuse, the ALJ devised two individuated RFCs – one for Plaintiff "while intoxicated," AR at 25, and one for Plaintiff "while sober," AR at 26.  The ALJ found that Plaintiff, while intoxicated:

> (1) Will miss work more than one or two days per month;
> (2) Cannot day-in and day-out report daily to a job in a timely manner;
> (3) Cannot work cooperatively with co-workers and supervisors, such that he cannot respond appropriately to criticism or direction by supervisors;

> (4) Cannot interact with the general public; and
>
> (5) Is limited to simple work with frequent re-direction to task.

AR at 25.  When Plaintiff was sober, however, the ALJ found only that Plaintiff:

> (1) Cannot interact with the general public; and
>
> (2) Is limited to simple work with one or two-step tasks with routine supervision.

AR at 26.  Before proceeding to step four, the ALJ found that Plaintiff's alcohol use "is material to a finding of disability."  AR at 29.

At step four, the ALJ found that Plaintiff could not perform any past relevant work.  AR at 30.  Accordingly, the ALJ proceeded to step five.  Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy.  AR at 30–31.  Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and he denied the claim.  AR at 31–32.

## II.     The ALJ's Materiality Finding Is Not Supported by Substantial Evidence

Plaintiff advances multiple grounds for remanding the ALJ's decision based on what he sees as a flawed DAA analysis.  Among these, Plaintiff avers that the ALJ equated brief encounters with the clinic when sober with "periods of sobriety," that Plaintiff never stopped consuming alcohol during the relevant period, and that no substantial evidence exists to demonstrate a "period of sobriety" under SSR 13-02p.  Doc. 18, Pl.'s Mot., at 7–12. Fundamentally, his challenge is premised on the provisions of SSR 13-02p(9), a Ruling which he believes "establishes that momentary, or 'instances' of sobriety, even if better documented than in this record, are not sufficient" to support a materiality finding.  Doc. 26, Pl.'s Reply, at 10; *see* SSR 13-02p, 2013 WL 621536, at *1–12.  Accordingly, he requests that this Court remand for a proper DAA analysis.

The Commissioner responds that the ALJ applied relevant "standards correctly."  Doc.

22, Def.'s Resp., at 5.  She contends that the ALJ "pointed to substantial evidence in the record

to support these findings . . . [and] [t]he ALJ's findings were also consistent with the record as a

whole."  *Id.* at 5–6.  Specifically, the Commissioner cites to Plaintiff's improvement during

admissions to the hospital in 2011 and 2013, as well as to the findings of the two state non-

examining psychologists who found that DAA was material in Plaintiff's case.[3]  *Id.* at 6.  For

these reasons, the Commissioner urges this Court not to "displace the agency's choice between

two fairly conflicting views, even though the [C]ourt would justifiably have made a different

choice had the matter been before it *de novo*."  *Id.* at 8 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084

(10th Cir. 2007)).

In 1996, Congress enacted the Contract with America Advancement Act ("CAAA"),

which amended the Social Security Act.  *See* 42 U.S.C. § 423(d)(2)(C) (2000); *Salazar v.*

*Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006) (citing Pub. L. No. 104–121, 100 Stat. 848, 852).

Pursuant to the reforms of the CAAA, claimants may not be found disabled on account of

alcoholism or the use of illegal substances.  Accordingly, a claimant will not be found disabled if

drug abuse or alcoholism is material to the determination of disability.  *See* 42 U.S.C. §

1382c(a)(3)(J) (2012); 20 C.F.R. §§ 416.935–416.941 (2016).

The Commissioner has adopted a special procedure for evaluation of whether a claimant

who has limitations caused by DAA is disabled only because of drug or alcohol abuse.  20

C.F.R. § 416.935(b); *see also* 42 U.S.C. § 423(d)(2)(C) (2012) ("An individual shall not be

considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would

---

[3] The ALJ mentioned neither the periods of hospitalization nor the opinion of the non-examining psychologists in his opinion.  These efforts by the Commissioner are impermissible post-hoc rationalizations.  *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

(but for this subparagraph) be a contributing factor material to the Commissioner's determination

that the individual is disabled.").   The ALJ must follow this procedure if he finds that the

claimant is disabled and the claimant's record contains "medical evidence of [his or her] drug

addiction or alcoholism."   20 C.F.R. § 416.935(a); *see also Drapeau v. Massanari*, 255 F.3d

1211, 1214 (10th Cir. 2001).   In making this determination, the "key factor . . . is whether [the

ALJ] would still find [claimant] disabled if [claimant] stopped using drugs or alcohol."   20

C.F.R. § 416.935(b)(1).   The ALJ must evaluate which of the claimant's physical and/or mental

limitations, upon which the threshold disability determination was based, would remain if the

claimant stopped using drugs or alcohol, and then determine whether any or all of the remaining

limitations would be disabling.   20 C.F.R. § 416.935(b)(2).   If the ALJ finds that a claimant's

remaining limitations would not be disabling, then the DAA is a material contributing factor to

the claimant's disability and the ALJ must determine the claimant is not disabled.   20 C.F.R. §

416.935(b)(2)(i).   If the ALJ finds that the remaining limitations would in and of themselves be

disabling, then the ALJ must determine that the claimant is disabled irrespective of his abuse of

drugs or alcohol.   20 C.F.R. § 416.935(b)(2)(ii).

Social Security Ruling ("SSR") 13-02p sets out further guidance regarding the process

for analyzing whether DAA is a material contributing factor to the claimant's disability.   *See*

SSR 13-02p, 2013 WL 621536.   Recognizing that periods of abstinence represent the "best

evidence" for determining what disabilities remain absent the use of drugs or alcohol, *id.* at *8,

SSR 13-02p sets forth as follows:

> a. Each substance of abuse, including alcohol, has different intoxication
> and long-term physiologic effects.  In addition, there is a wide variation in
> the duration and intensity of substance use among claimants with DAA,
> and there are wide variations in the interactions of DAA with different
> types of physical and mental disorders.  For these reasons, we are unable
> to provide exact guidance on the length and number of periods of

abstinence to demonstrate whether DAA is material in every case.  In some cases, the acute and toxic effects of substance use or abuse may subside in a matter of weeks, while in others it may take months or even longer to subside.  For some claimants, we will be able to make a judgment about materiality based on evidence from a single, continuous period of abstinence, while in others we may need to consider more than one period.

b. In all cases in which we must consider periods of abstinence, the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate.  Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated.  Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended.  To find that DAA is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period.

*Id.* at \*12 (emphasis added).  Furthermore, in those cases where a claimant has a co-occurring mental disorder, the Ruling instructs ALJs to cautiously assess improvement where that improvement occurs in a highly-structured environment, whether it be therapy or a hospital stay. *Id.* at \*12–13.

Based on relevant regulations and rulings, the Court concurs with Plaintiff's argument. The ALJ's DAA analysis fails because his materiality analysis is based on improperly construed periods of abstinence, and therefore, is unsupported by substantial evidence.

In concluding that Plaintiff's DAA was a material contributing factor to disability, the ALJ relied exclusively on the presentation of Plaintiff in four medical encounters.  On each occasion, despite the ALJ's belief that Plaintiff engaged in "daily or near daily ETOH (alcohol) abuse," AR at 25, he assumes, with no evidentiary support, that Plaintiff is experiencing a period of abstinence.  The ALJ's error is particularly striking in his reference to the encounter of November 29, 2012, which the ALJ cites for the notion that Plaintiff "stays very active during

the day." AR at 29. That visit, in fact, was no visit at all, but rather, a telephonic pre-operative

interview where Plaintiff was not observed, and more importantly, the nurse *actually* noted under

a section entitled cardiac factors, "*disabled*, stays active during the day." AR at 1274. The three

other occasions were all visits to Dr. David J. Manno, a U.S. Department of Veterans Affairs

psychiatrist. Two of these visits were thirty minutes in length, and made no mention of

screening Plaintiff for intoxication. AR at 1250–53 (2/22/13 visit); AR at 1291–95 (11/16/12

visit). The other was Plaintiff's intake appointment with Dr. Manno, where Dr. Manno

specifically noted he was "[u]nable to assess" Plaintiff's "[c]urrent use" of alcohol, tobacco, or

other drugs. AR at 1299. These three visits where Dr. Manno could actually observe Plaintiff

represent at most no more than two to three hours of actual observation. Although this Court

need not determine the precise contours of what constitutes a "period of abstinence" for purposes

of SSR 13-02p, this marginal observation period of *possible* abstinence clearly falls below the

paradigm of weeks and months contemplated by SSR 13-02p. *See* SSR 13-02p, 2013 WL

621536, at \*12. Accordingly, this Court cannot conclude that substantial evidence supports the

ALJ's DAA materiality finding, and this case must be remanded for a proper DAA analysis.

### III.   Credibility Finding

Additionally, Plaintiff urges remand based on the ALJ's "canned statement" regarding

Plaintiff's credibility. Doc. 18, Pl.'s Mot., at 20. The statement in question reads as follows:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of these are not entirely credible for the reasons explained in this decision.

AR at 27. Plaintiff argues that, despite the ALJ's boilerplate credibility finding, "the

Commissioner does not elsewhere discuss conflicting testimony" of Plaintiff. Doc. 18, Pl.'s

Mot., at 20.  The Commissioner responds that "the ALJ gave valid reasons to question Plaintiff's credibility," and that the "Tenth Circuit does not require the ALJ to do more than he did here." Doc. 22, Def.'s Resp. to Mot. to Remand, at 10–11 [hereinafter "Resp."].

The Commissioner is in error.  At steps four and five in the disability analysis, the ALJ is required to assess a claimant's RFC based on all relevant evidence, medical or otherwise.  20 C.F.R § 404.1545 (2015).  As part of this evaluation, the ALJ must take into consideration all the claimant's symptoms, including subjective symptoms.  20 C.F.R. §§ 404.1529(a), 404.1529 (c)(3) (2016).  Subjective symptoms, including pain, are those that cannot be objectively measured or documented.  In assessing subjective symptoms, the ALJ must consider statements of the claimant relative to objective medical evidence and other evidence in the record.  20 C.F.R. § 404.1529(c)(4).  If a claimant has a medically determinable impairment that could reasonably be expected to produce the identified symptoms, then the ALJ must evaluate the intensity, severity, frequency, and limiting effect of the symptoms on the claimant's ability to work.  20 C.F.R. 404.1529(c)(1).  At the time of the Decision, SSR 96-7 also required that the ALJ assess the credibility of a claimant's statements about her symptoms to make that determination.[4]

Ordinarily, the ALJ is "optimally positioned to observe and assess witness credibility." *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (quoting *Casias v. Sec'y of Health & Human Serv*., 933 F.2d 799, 801 (10th Cir. 1991)).  Consequently, a reviewing court will usually defer to an ALJ's credibility determination.  Nonetheless, "[f]indings as to credibility should be closely

---

[4] SSR 96-7p has since been superseded by SSR 16-3p, which no longer requires a credibility assessment.  *See* SSR 16-3p, 2016 WL 1119029, at *1 (effective Mar. 16, 2016) ("[W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.").

and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

Here, the ALJ found Plaintiff's statements "not entirely credible." AR at 27. Therefore, in order to determine whether this finding is supported by substantial evidence in the record, the Court must determine which of Plaintiff's statements concerning his symptoms were found lacking in credibility, and what evidence supports each finding. Unfortunately, the ALJ did not specify which of Plaintiff's statements he found incredible. In fact, the only two statements of Plaintiff's that the ALJ mentions are that he "hears voices sometimes" and "think[s] they're making fun of [him]." AR at 26. The ALJ makes no further mention of Plaintiff's testimony whatsoever.

Clearly, the credibility findings in this case are not sufficiently detailed. The determination must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. *See* SSR 96-7p, 1996 WL 362209, at *34484.[5] The findings here are unreviewable unless this Court were to reweigh the evidence, determine which of Plaintiff's testimony is not consistent with the ALJ's RFC assessment, and further determine whether substantial evidence in the record as a whole supports the ALJ's finding that the testimony that is inconsistent with the RFC assessment is not credible. This is a process the Court may not and will not undertake. *See Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (forbidding a reviewing court from reweighing the evidence). Plaintiff is entitled to have testimony regarding his symptoms evaluated by the ALJ and weighed alongside the medical evidence. *See*

---

[5] This was the governing Ruling at the time of the ALJ's decision. *See supra*, note 4.

*Huston*, 838 F.2d at 1131 (citations omitted).  In short, "[the] ALJ may not ignore the evidence

and make no findings."  *Id.*

### IV.      Weight Accorded to Medical Opinions

Lastly, the Court will remand this case for a proper evaluation of the medical opinions in

the record.  Under SSA regulations, an ALJ is required to evaluate every medical opinion in the

record, giving varying weight to each opinion "according to the relationship between the

disability claimant and the medical professional."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215

(10th Cir. 2004).  Generally, the opinion of a treating physician is given more weight than that of

an examining consultant, and the opinion of a non-examining consultant is given the least

weight.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  In those cases where a

treating physician's opinion is not assigned controlling weight, however, an ALJ may properly

rely on consulting physicians' opinions.  *See Havenar v. Astrue*, 438 F. App'x 696, 700 (10th

Cir. 2011) (citing SSR 96–6p, 1996 WL 374180, at *1–2).  The governing regulation "states that

the weight an ALJ may give to the opinions of nonexamining sources 'depend[s] on the degree to

which they provide supporting explanations for their opinions,' and that an ALJ should 'evaluate

the degree to which these opinions consider all of the pertinent evidence in [a] claim, including

opinions of treating and other examining sources.'"  *Tarpley v. Colvin*, 601 F. App'x 641, 644

(10th Cir. 2015) (unpublished) (quoting 20 C.F.R. § 416.927(c)(3)).  If an ALJ intends to rely on

a non-examining physician's opinion, she must explain the weight she is giving to it.  *Hamlin*,

365 F.3d at 1215 (citing 20 C.F.R. § 416.927(f)(2)(ii)); *see* 20 C.F.R. §§ 404.1527(e)(2)(ii),

416.927(e)(2)(ii) (requiring the ALJ to discuss the weight given to medical source opinions)).

Inexplicably, the ALJ's decision makes no mention whatsoever of the two non-examining

psychologists who provided opinions on Plaintiff's mental limitations.  *See* AR at 88–90 (Dr.

Reed); 100–06 (Dr. Sagon).  That omission is particularly conspicuous here, as Plaintiff's RFC

appears to derive from their reports.  Yet, the Commissioner explains that "[e]ven if the ALJ

should have discussed the doctor's reports, this should not be a basis for remanding this case."

Def.'s Resp. at 13 n.4.  In support, the Commissioner cites to *Howard v. Barnhart* for the

proposition that "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order

to determine a claimant's RFC, the need for express analysis is weakened."  *Id*. (quoting *Howard*

*v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)).  She also avers that the ALJ's error is harmless

where there is "no reason to believe that a further analysis or weighing of this opinion could

advance [the claimant's] claim of disability."  *Id.* (quoting *Keyes-Zachary v. Astrue*, 695 F.3d

1156, 1163 (10th Cir. 2012)).

The Commissioner misinterprets applicable case law.  In *Howard*, the Tenth Circuit

distinguished its holding from *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996),[6] where

the court ruled that an ALJ must discuss both the evidence supporting his decision and the

evidence he rejects or chooses not to rely upon.  *Howard*, 379 F.3d at 947.  The court did so on

two bases, neither of which exist here.  First, the *Howard* court allowed latitude because the

"ALJ discussed all of the relevant medical evidence in some detail."  *Id.*  Additionally, "and

perhaps more importantly" to the *Howard* court, "none of the record medical evidence

conflict[ed] with the ALJ's conclusion that claimant can perform light work."  *Id.*  This contrasts

markedly from Plaintiff's case, where the ALJ ignored or discounted hundreds of pages of

Department of Veterans Affairs medical records because they "do not lend any further insight"

---

[6] "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citations omitted).

into his findings.  AR at 29.[7]  Furthermore, unlike the *Howard* case, here, medical evidence does

exist in the record to contradict the ALJ's RFC finding.  Consequently, the Commissioner's

reliance on *Howard* is misplaced.

The Commissioner's reliance on *Keyes-Zachary* is similarly misplaced.  In *Keyes-Zachary*, the claimant alleged that the ALJ erred by failing to weigh numerous medical reports.

695 F.3d 1156, 1162 (10th Cir. 2012).  Unlike the case now before the Court, in *Keyes-Zachary*,

the ALJ did discuss each of the four reports that could be traced to a medical provider.  Although

the level of the ALJ's attention varied among the records, the ALJ discussed the first record "at

some length but never explicitly stated whether he found it persuasive or what weight he

assigned to it."  *Id.*  As to the second, the ALJ "discussed . . . but did not expressly weigh it."  *Id.*

The third was discussed without being weighed, and the fourth report was "mentioned."  *Id.* at

1163–65.  Despite failing to weigh multiple opinions, the ALJ's discussion of these records and

integration of their opinions into his RFC finding led the *Keyes-Zachary* to find "harmless error"

where the ALJ also failed to assign a specific weight to the opinions.  *Id.* at 1161–65.

In this case, the ALJ made no mention of mental health records.  He did not mention,

discuss, or assign weight to any such record.  The ALJ simply left the parties and reviewing

courts to divine the source of the mental RFC he crafted for Plaintiff.  This is precisely the ill the

regulations sought to prevent.  *See Huston*, 838 F.2d at 1131 ("An ALJ may not ignore the

evidence and make no findings."); 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[T]he

administrative law judge must explain in the decision the weight given to the opinions of a State

agency medical or psychological consultant or other program physician, psychologist, or other

medical specialist, as the administrative law judge must do for any opinions from treating

---

[7] Among other things, the fact that Plaintiff had a paranoid episode *while* in the psychiatric ward, and therefore not while under the influence of alcohol, AR at 1291, apparently had no influence on the ALJ's opinion "that Mr. Trivino's limitations when not drinking, while significant, do not preclude him from work."  AR at 29.

sources, nontreating sources, and other nonexamining sources who do not work for us.").  In its

analysis, this Court must rely on the conclusions drawn by the ALJ and may not "create or adopt

post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's

decision itself."  *Haga*, 482 F.3d at 1207–08.  To interpret *Keyes-Zachary* as the Commissioner

would urge would render the regulations inert.  Further, it would deprive both parties and courts

of the ability to meaningfully examine an ALJ's reasoning to ensure it is free of legal and factual

error.  The Court refuses to adopt that position, and instead remands for a discussion and

weighing of medical opinions in the record that conforms to applicable regulations and extant

case law.

### CONCLUSION

Although the Court sustains the Commissioner's Objections in light of the Tenth

Circuit's recent holding in *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), remand is required

for the three separate bases articulated above, which are not impacted by the holding in *Smith*:

(1) the ALJ's insufficient DAA analysis; (2) the ALJ's inadequate credibility findings; and (3)

the ALJ's failure to properly assign weight among medical opinions.

**IT IS THEREFORE ORDERED** that the Commissioner's Objections to the PFRD

[Doc. 32] are **SUSTAINED**, and U.S. Magistrate Judge Gregory Fouratt's PFRD [Doc. 31] is

**MODIFIED** as set forth above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Reverse or Remand [Doc. 17] is

**HEREBY GRANTED**, and the Commissioner's final decision is **HEREBY REVERSED** and

**REMANDED** for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

DATED this 29th day of September, 2016.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**


HELEN LAURA LÓPEZ
*Attorney for Plaintiff*

DAMON P. MARTINEZ
United States Attorney
*By:* MANUEL LUCERO
Assistant United States Attorney

MICHAEL HOWARD
Special Assistant United States Attorney
Social Security Administration

*Attorneys for Defendant*